McKinney, J.,
delivered the opinion of the Court.
This was an application to the Circuit Court of Carter for a mandamus.
From the petition it appears, that the plaintiff in error was the Judge of the County Court of Carter; and in that capacity, be procured repairs to be made upon the Court House, in the year 1857, amounting to $28.34, which repairs are alleged in the petition to have been necessary, and without which the Courts could not be held therein, with comfort, or convenience.
This account having been duly audited and certified by the plaintiff, as County Judge, was presented to the County Court at a Quarterly Term, but a majority of the *209 justices refused to allow or to make an appropriation for the payment thereof.
The petition was demurred to and the demurrer was sustained.
Two questions are submitted for our determination: 1st. Had the County Judge, as such, power to bind the County Court by his individual contract for repairs, without the direction or assent of the justices ? 2nd. If so, does the Circuit Court possess the power to coerce the County Court to discharge this liability?
As regards the latter question, we feel no difficulty The principle of the case of Newman vs. The Justices of Scott County: 5 Sneed, 695, we think is decisive of this question. Wherever a positive legal liability is fixed upon the County Court, its discharge may be enforced by the Circuit Court, by virtue of its general superintending power over all inferior jurisdictions.
Upon the other questions there is more room for doubt.
By the Act of 1856, ch. 258, which created the office of “ County Judge,” that functionary is invested with various highly important powers and duties.
By the 8th section, it is declared: “ That the County Judge shall be the accounting officer and general agent of the County; and as such, he shall have power, and it shall be his duty, first, to have the care and custody of all County 'property, except such as is by law placed in the custody of other officers,” &c.
It is-highly important that the Court House and other public buildings of the County shall, be kept in proper repair; and it seems to have been wisely considered by the Legislature, that the power and duty of doing so, *210 should be lodged 'elsewhere than in the aggregate body of the magistracy of the County.
Hence, by the Act of 1741, ch. 18, sec. 2, the justices of each County are expressly empowered to employ persons “ to keep in repair,” the Court House and prison. By the Code, sec. 413, the Sheriff has charge of the Court House, unless some other person is specially appointed by the Court for that purpose, and he shall prevent trespasses, exclude intruders, and keep it and the grounds attached thereto, in order, reporting from time to time, the repairs required, and the expenses, to the County Court.
The case before us occurred before the adoption of the Code, and must be governed by the previous law. We have cited the provisions of the Code which was enacted after the repeal of the Act of 1856, creating the office of County Judge, to show that the Legislature has constantly maintained the policy of placing the Court House and public buildings in the care of some responsible person, instead of leaving this important matter to the collective body of the justices.
We have seen that by the Act of 1856, the County Judge is constituted the general agent of the County, and is invested with jurisdiction and powers, in several respects, above, and independant of the justices altogether. He is not only expressly invested with the power, but the duty is positively enjoined upon him, to take upon himself “the care and custody of all public buildings and property of the County, not by law placed in the custody of other officers.”
This provision is, in substance, incorporated into the Code, section above cited.
*211 Now -what does tlio duty of taking “ care ” of the Court House necessarily imply ? From the plain import of the words of the Act, and the manifest intention of the Legislature, before alluded to, this question, is one of no very difficult solution. To take care of the Court House, in the sense of the law, is, among other things; to keep it in proper order and repair. In general wherever the power to do an act is expressly conferred, the means necessary and proper to the execution of the power, are also impliedly given. "Would it not be absurd to say, that a particular officer, as the County Judge, should be responsible for keeping the Court House in proper repair, and yet deny, to him the necessary means of doing so — or, in other wordsj leave it to the uncontrolled discretion or caprice of the justices of the County Court to furnish the means, or to refuse to do so ?
Being charged with the power and duty of keeping and taking care of the Court House, independantly of the justices of the County Court, the officer must also be held to possess the power, independantly of them, and upon his own individual responsibility, to contract for -such repairs or improvements as shall be necessary and proper; and the expense of such necessary and proper repairs, the justices of the County Court cannot refuse to discharge. The power of the justices to levy taxes, and to make appropriations for the discharge of County liabilities, does not, in this instance, carry with it the implied power to control the proper officer in the discharge of his duty of contracting for suitable and necessary repairs.
*212 The officer is to procure the repairs to be made, and the justices are simply to provide the means of payment.
But, we are not to be understood as intimating that the justices are bound to pay for all repairs that the officer may contract for. The power of the officer extends only to such repairs as, in the given case, may be proper; and beyond this, the justices are not bound to go in making appropriations.
The judgment will be reversed, and a peremptory mandamus will be awarded.